# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH CHARITY,** | ) | **CASE NO. 4:09-CV-02958-SL** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **GMAC MORTGAGE** | ) | |
| **INVESTMENTS, INC., et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This Memorandum Opinion arises out of a motion (Doc. No. 15) by the Defendants, GMAC Mortgage, LLC ("GMAC"), ditech, LLC ("ditech"), and Residential Capital, LLC ("Residential Capital") (collectively "Defendants"), for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff, Deborah Charity ("Plaintiff" or "Charity"), has filed a response in opposition, and Defendants filed a reply (Doc. No. 20). The matter is ripe for determination. For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is an individual homeowner and mortgagor. Defendants are Delaware limited liability companies that are wholly owned indirect subsidiaries of a Delaware corporation. The Complaint sets forth a number of allegations, all of which arise out of either Defendants' alleged conduct with respect to a settlement agreement reached between Plaintiff and Defendants in a previous action, Case No. 4:08-CV-743 ("*Charity I*"), or Defendants' conduct with respect to Plaintiff's applications in 2008 and 2009 to refinance loans owned and/or serviced by Defendants.

**A.** *Charity I*

It is undisputed that, on or about March 24, 2004, Plaintiff and her then husband Rodney Cheatham ("Cheatham") took out a mortgage from Defendants in the amount of $161,000. The loan was subject to a thirty-year repayment period and a 5.875% annual fixed interest rate. The loan became the senior lien on Plaintiff's property ("Senior Loan").

Approximately one year later, Plaintiff and Cheatham applied for another loan from Defendants, and on May 25, 2005, Defendants extended to Plaintiff a home equity loan in the amount of $56,000. (Defs.' Mem. in Supp. of Mot. for Summ. J. Ex. A3, "Home Equity Agreement.") The loan was subject to a fifteen-year repayment period and an initial 6% annual variable interest rate ("Junior Loan"). (*Id.*) Pursuant to the Home Equity Line of Credit Open-End Agreement executed by Defendants and Plaintiff ("LOC Agreement"), Plaintiff and Cheatham were entitled to draw funds from the Junior Loan up to $56,000, and were required to make certain minimum payments to Defendants only when there was an outstanding balance on the Junior Loan. (*Id.*)

On February 15, 2008, nearly three years after receiving the home equity line of credit, Plaintiff filed a Complaint against Defendants in Trumbull County Common Pleas Court. (Defs.' Mem. in Supp. of Mot. for Summ. J. Ex. B, "*Charity I* Complaint.") Plaintiff alleged that, with regard to two loan applications she submitted to Defendants in 2004 and 2005, Defendants had failed to meet various statutory notification requirements and had unlawfully discriminated against her in violation of the Federal Trade Commission Act ("FTCA") and the Fair Credit Reporting Act ("FCRA"). (*Id.* at ¶¶ 1-4.) Plaintiff sought $2 million in compensatory damages and $1 million in punitive damages. (*Id.*) Defendants removed the *Charity I* state court action to

the Northern District of Ohio and filed their answer to Plaintiff's complaint. (Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. A, Affidavit of Scott Zeitz at ¶ 13.)

Shorty after Plaintiff filed *Charity I*, she ceased making payments on the mortgage loan and home equity line of credit. As of mid-July 2008, Plaintiff had not made payments on either loan for four months and, consequently, she defaulted on both loans. (*Id.* at ¶¶ 11-12.) As a result, Defendants initiated a foreclosure action against Plaintiff and Cheatham in the Trumbull County Common Pleas Court. *See Federal National Mortgage Association v. Cheatham, et al.*, Case No. 2008-CV-02059 ("Foreclosure Lawsuit"). (*Id.* at ¶¶ 31.) A hold was eventually placed on the foreclosure action while the parties continued to pursue settlement discussions relative to *Charity I*. (*Id.* at ¶ 33.)

On or about August 25, 2008, Plaintiff and Defendants entered into a settlement agreement ("*Charity I* Settlement Agreement" or "Settlement Agreement"). In the Settlement Agreement, Defendants agreed to (1) modify Plaintiff's loans pursuant to a supplemental modification agreement, and  (2) amend Plaintiff's credit going back to April 2008. In return, Plaintiff agreed to (1) pay $1,881.64 to GMAC by August 20, 2008, (2) dismiss the action with prejudice within ten days of the date of the Settlement Agreement, and (3) release Defendants as provided for in the Settlement Agreement. (Defs.' Mem. in Supp. of Mot. for Summ. J.  Ex. A-9).

On September 15, 2008, a dismissal entry was filed in *Charity I*, and the next day the case was dismissed with prejudice. On September 17, 2008, the foreclosure lawsuit Defendants had initiated against Plaintiff was dismissed. Since the dismissal of *Charity I,* Plaintiff has made timely payments on both loans. (Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. C, "Stipulation of Dismissal"; Zeitz Aff. at ¶ 40.)

**B. Post-Settlement Loan Applications**

Within one year of having settled *Charity I*, Plaintiff submitted to ditech three separate applications seeking to refinance her loans. (Complaint at ¶3.) Defendants contend that, for each of the refinancing applications Plaintiff submitted, the available interest rate offered was not materially lower than the interest rate Plaintiff enjoyed on the Senior Loan. As such, because of the costs associated with refinancing, there was no financial incentive for Plaintiff to refinance. (Zeitz Aff. at ¶¶ 9-10.) Consequently, Defendants maintain, Plaintiff informed ditech that she was no longer interested in refinancing, and the applications were classified as "withdrawn and cancelled" in accordance with ditech company policy. (*Id.* at ¶ 11.)

On November 16, 2009, Plaintiff filed the Complaint in the within case, challenging Defendants' stated rationale for classifying her applications for refinance as withdrawn and cancelled. Plaintiff alleges that Defendants violated numerous statutory reporting requirements, and breached the *Charity I* Settlement Agreement. (Complaint at ¶¶ 1-4.) Plaintiff seeks $2 million in compensatory damages and $1 million in punitive damages. (*Id.*)

## II. STANDARD OF REVIEW

On motion for summary judgment, a party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denial of the adverse party's pleading," *id.*, but "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment," *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). A mere scintilla of evidence showing only "some metaphysical

doubt as to the material facts" is not sufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Street*, 886 F.2d at 1479; *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. […] The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating an allegation on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and

admissions on file.[1] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

The entry of summary judgment is not a disfavored procedural shortcut, but instead is mandated by "the plain language of Rule 56(c) [. . .] after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Of course, the movant is not required to file affidavits or other similar materials negating an allegation on which its opponent bears the burden of proof, so long as the movant relies upon the absence of

---

[1] As Defendants quite properly note, Plaintiff has failed to authenticate the documents attached to her opposition to summary judgment with an affidavit meeting the requirements of Rule 56(e). These documents, therefore, are not properly before the Court. *See Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) ("It is [] the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)."); *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) ("This court has ruled that documents submitted in support of summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded.") Nonetheless, as will be evident from the discussion below, even if Plaintiff had properly authenticated her supporting documents, the documents would not have been sufficient to raise a genuine issue of material fact as to any allegation in her Complaint.

the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex,* 477 U.S. at 322.

### III. LAW AND ANALYSIS

In her Complaint, Plaintiff sets forth a number of different "claims" or allegations against Defendants, which arise out of either Defendants' alleged conduct with respect to the *Charity I* Settlement Agreement or Defendants' conduct with respect to Plaintiff's applications in 2008 and 2009 to refinance loans owned and/or serviced by Defendants. As Defendants note, the allegations are not organized into separate and distinct claims. Nonetheless, for ease of reference and in order to address Defendants' motion, the Court has organized the allegations into claims to the extent possible.

**A. Claims Arising Out of Defendants' Conduct Surrounding the *Charity I* Settlement**

*1. Plaintiff's Claim: Defendants breached the Charity I Settlement Agreement by failing to modify Plaintiff's existing home equity loan.*

Plaintiff alleges that Defendants breached the terms of the *Charity I* settlement when Defendants failed to modify Plaintiff's existing home equity loan and instead converted Plaintiff's Junior Loan from a line of credit to a closed-ended mortgage and gave the Junior Loan a new account number without Plaintiff's permission. (Complaint at ¶ 2.) Defendants insist that prior to settlement, Plaintiff was made aware of the manner in which her loan would be modified, and that the loan modification agreement signed by Plaintiff as part of the settlement in *Charity I* explicitly addresses the manner in which Plaintiff's loan would be modified. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 14.) Defendants also note that Plaintiff has failed to allege any damages that she sustained as a result of Defendants' alleged breach. (*Id.*)

An analysis of the loan modification agreement is unnecessary in light of Plaintiff's failure to allege or provide evidence of any harm that would amount to damages

caused by Defendants' conversion of the Junior Loan from a line of credit to a closed-ended mortgage with a new account number.

To establish an allegation of breach of contract under Ohio law, a plaintiff must demonstrate: (1) the existence of an enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages suffered by the plaintiff as a result of the breach. *Jarupan v. Hanna*, 173 Ohio App. 3d 284, ¶ 18 (Ohio Ct. App. 10th Dist. 2007)*; Garofalo v. Chicago Title Ins. Co*., 104 Ohio App. 3d 95, 108 (Ohio Ct. App. 8th Dist. 1995). The existence of legally cognizable damages is, therefore, an essential element of any breach of contract action. *Firsdon v. Mid-American Nat'l Bank & Trust Co*., 1998 Ohio App. LEXIS 6028, at *6 (Ohio Ct. App. 6th Dist. Dec. 18, 1998) (citing *American Sales v. Boffo*, 71 Ohio App. 3d 168, 174 (Ohio Ct. App. 2nd Dist. 1991)) ("Unquestionably, damages are an essential element of a breach of contract allegation.") *See Doner v. Snapp*, 98 Ohio App. 3d 597, 600 (Ohio Ct. App. 2nd Dist. 1994).

"A plaintiff in a breach of contract action is entitled to those damages which 'arise naturally from the breach of the contract, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach [...].'" *W & W Dev. Co. v. Hedrick*, 1999 Ohio App. LEXIS 1679, at *19 (Ohio Ct. App. 8th Dist. Apr. 15, 1999) (quoting *Champion Ice Mfg. & Cold Storage Co. v. Pennsylvania Ironworks Co*., 68 Ohio St. 229, 234 (1903)). *See Toledo Group v. Benton Indus.*, 87 Ohio App. 3d 798, 806 (Ohio Ct. App. 6th Dist. 1993) ("Damages for a breach of contract are those which are the natural or probable consequence of the breach of contract or damages resulting from the breach [...].") As such, there must be a causal connection between the breach and the damages alleged. *Harrison Constr. Co. v. Ohio Turnpike Com*., 316 F.2d 174, 178 (6th Cir. 1963) ("[A]

showing of causal connection between the breach of contract alleged and the damages allegedly suffered is part of [the plaintiff's] prima facie case on which it sustains the burden of proof.") *See Telxon Corp. v. Smart Media of Del., Inc*., 2005 Ohio App. LEXIS 4475, at ¶ 105 (Ohio Ct. App. 9th Dist. Sept. 21, 2005) ("[T]he damages must have been directly caused by the wrongful breach, not by something else.")

Once challenged on summary judgment, a plaintiff must come forward with competent, credible evidence to create a question of fact as to the existence of damages. *Firsdon*, 1998 Ohio App. LEXIS 6028, at *7. *See Beemes v. Public Employees Retirement Sys.*, 102 Ohio App. 3d 782, 789-790 (Ohio Ct. App. 12th Dist. 1995). As to the amount of damages, it cannot be speculative or based upon conjecture. *Allied Erecting Dismantling Co. v. City of Youngstown*, 151 Ohio App. 3d 16, ¶ 64 (Ohio Ct. App. 7th Dist 2002). Still, it need not be proven with mathematical certainty; rather, the amount need only be ascertainable with reasonable certainty.[2] *Starr Printing Co. v. Air Jamaica*, 45 F. Supp. 2d 625, 634 (W.D. Tenn. 1999); *Allied*, 151 Ohio App. 3d at ¶ 64; *Staffing Am. v. Titan Distrib. Servs.*, 2000 Ohio App. LEXIS 4465, at *8 (Ohio Ct. App. 1st Dist. Sept. 29, 2000).

In the instant case, Plaintiff has failed to offer any evidence of damages arising out of Defendants' alleged conduct with respect to the modification of the Junior Loan. Defendants' actions have not impeded Plaintiff from repaying the Junior Loan and Plaintiff has made timely payments on the Junior Loan since the dismissal of *Charity I*. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 14.) Consequently, because Plaintiff has failed to establish the existence of damages, Defendants' motion for summary judgment on this claim is **GRANTED**.

---

[2] The uncertainty that prevents a recovery of damages is generally uncertainty as to the existence of damages, and not the amount. *Accurate Die Casting Co. v. Cleveland*, 2 Ohio App. 3d 386, 391 (Ohio Ct. App. 8th Dist. 1981).

### 2. Plaintiff's Claim: Defendants "hid" the Junior Loan from Plaintiff.

Plaintiff next alleges that Defendants "hid" the Junior Loan for several months, arguing that even Defendants' employees could not locate the loan to assist her in making monthly payments. (Complaint at ¶ 2.)  According to Plaintiff, this renders the Junior Loan fraudulent. (*Id.*)

Defendants explain that Plaintiff was looking for the loan on ditech's website, and that while ditech was the originator of the Junior Loan, GMAC is the servicer of the loan, and accordingly, the loan is listed on GMAC's website; as such, the Junior Loan was not "hidden." (Defs.' Mem. in Supp. of Mot. for Summ. J. at 15.) Moreover, Defendants maintain that Plaintiff has failed to allege any damages arising out of her inability to locate and pay the Junior Loan online. (*Id.*)

Even if Defendants were found to have "hidden" Plaintiff's Junior Loan within the confines of the ditech website, Plaintiff fails to offer any evidence of damages resulting from her inability to find and pay her Junior Loan online. Plaintiff does not deny that she has made timely payments on the Junior Loan since the dismissal of *Charity I.* Thus, summary judgment is appropriate because Plaintiff has failed to establish the existence of damages arising out of Plaintiff's inability to locate the Junior Loan online and, therefore, Defendants' motion for summary judgment on this claim is **GRANTED**.

### 3. Plaintiff's Claim: Defendants added Plaintiff's missed Senior Loan payments back to the principal of the Senior Loan in violation of Ohio Rev. Code §§ 1345.03-31, 1345.04-05.

Plaintiff alleges that Defendants exploited Plaintiff's "ignorance of fees" during the settlement of *Charity I* to add to the principal of the Senior Loan an amount equal to that which Plaintiff had failed to pay on the Senior Loan leading up to settlement. (Complaint at ¶ 4.)

Plaintiff alleges this violates Ohio Rev. Code §§ 1345.03-31, 1345.04-05.[3] (*Id.*) In response, Defendants contend that Plaintiff has released any claim arising out of the settlement of *Charity I*, and Plaintiff is barred from raising the claim in this litigation. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 15-16.)

Generally, "[a] plaintiff who knowingly and voluntarily agrees to settle his allegations is bound by his agreement." *Wyche v. Procter & Gamble*, 772 F. Supp. 982, 984 (S.D. Ohio 1990) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)). Consequently, a "valid [. . .] settlement bars all right of recovery on the previously existing claim [. . .] and, as a result, any subsequent litigation based upon it is barred." *Globe Metallurgical v. Hewelett-Packard Co.*, 953 F. Supp. 876, 881 (S.D. Ohio 1994) (citing 15a Am. Jur. 2d *Contracts* § 24), *aff'd*, 99 F.3d 1139 (6th Cir. 1996). While the Court is mindful of Plaintiff's status as a pro se litigant, in Ohio, pro se litigants are "presumed to have knowledge of the law and correct legal procedure" and are held to the same standard as litigants who retain counsel. *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App. 3d 357, 363 (Ohio Ct. App. 8th Dist. 1996). Thus, unless a settlement, or a provision of a settlement, is invalid, a pro se plaintiff who negotiates her own settlement is bound by the terms of the settlement. *Szabo v. Lepore*, Case No. 05-MA-145, 2006 WL 1903131, at *5 (Ohio Ct. App. 7th Dist. July 5, 2006) (holding that the court could not "afford appellant an 'out,' so to speak, of a mutually-agreed upon settlement simply because [the plaintiff] chose to proceed with mediation pro se.")

---

[3] § 1345.03(C) explicitly states, "This section does not apply to a consumer transaction in connection with a residential mortgage." Consequently, § 1345.03 is inapplicable to the instant case. § 1345.04 (Jurisdiction) and § 1345.05 (Consumer Protection Powers and Duties of the Attorney General) are also inapplicable. The only statute Plaintiff accuses Defendants of violating that is potentially applicable is § 1345.031 (Unconscionable Acts of Practices Concerning Residential Mortgages). However, an advanced discussion of the merits regarding Defendants' alleged violation is unnecessary in light of the *Charity I* Settlement Agreement. *See infra.*

In the instant case, the relevant provision of the *Charity I* Settlement Agreement provides:

> 3. <u>Releases.</u> Releasors, hereby unconditionally and irrevocably […] release and forever discharge Releasees from any and all allegations […] whether known or unknown or capable of being known from the beginning of time up to and including the date of this Agreement that are relating to, concerning, or underlying the Loans, the Action, and/or the servicing or administration of such Loans that may be pending or that may be satisfied.
>
> […]
>
> 5. <u>Transactional Release.</u> To the extent any allegations arise in connection with entering into this Agreement, Releasors agree to waive and release those allegations [. . .]

(*Charity I* Settlement Agreement at ¶¶ 3, 5.) The provision forms part of a standard release clause that is not unusual in negotiated settlement agreements. Nothing in the language of the Settlement Agreement, generally, or the release clause, specifically, renders the clause invalid. Therefore, because the allegation asserted by Plaintiff—that Defendants exploited her ignorance of fees during settlement in violation of Ohio consumer protection laws —arises out of the *Charity I* Settlement Agreement, Plaintiff's allegation is barred the terms of the Settlement Agreement absent a showing by Plaintiff of some other cause for setting aside the language of the Settlement Agreement. *See generally, Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352 (2008) (discussing factors that may contribute to a finding of unconscionability). Here, Plaintiff can point to no evidence in the record that disputes Defendants' contention that she knowingly and voluntarily entered into the Settlement Agreement with Defendants.[4] Consequently, the release clause of the *Charity I* Settlement Agreement precludes Plaintiff's claim and Defendants' motion for summary judgment on this claim is **GRANTED.**

---

[4] The Settlement Agreement contained the following clause, which Plaintiff signed: "10. <u>Knowing and Voluntary Agreement</u>. The Parties represent that they are represented by counsel of their choosing or that they have independently made their own analysis and decision to enter into this Agreement, and that they consider this Agreement to be fair and reasonable." (*Charity I* Settlement Agreement at ¶ 10.)

### 4. *Plaintiff's Claim: Defendants added Plaintiff's ex-husband to the Junior Loan without Plaintiff's permission in violation of the Charity I Settlement Agreement.*

Plaintiff puts forth two claims arising out of her ex-husband's status as a borrower to the loans, the first of which is Plaintiff's allegation that Defendants added Plaintiff's ex-husband to the post-settlement converted Junior Loan. (Complaint at ¶ 2.) Plaintiff alleges, "no signatures were obtained for [the Junior] [L]oan." (*Id.*) Plaintiff's ultimate allegation, presumably, is that, because a co-borrower to the original home equity line of credit failed to sign the modification agreement, the converted loan is fraudulent.

Documents offered in support of summary judgment demonstrate that a quitclaim deed was utilized specifically to allow Plaintiff to unilaterally sign the loan modification agreement that formed part of the *Charity I* Settlement Agreement. (Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. A12, "Correspondence.") In a conversation between Plaintiff and Defendants' attorney, Plaintiff was informed that the quitclaim deed was needed "in order to go forward with the [Junior Loan] modifications with only [Plaintiff] signing the documents." (*Id.*) Thus, it is evident that even prior to the *Charity I* Settlement Agreement being finalized, Plaintiff was advised of the reason why her ex-husband's signature was unnecessary to execute the loan modification and subsequent conversion. Plaintiff can point to no evidence in the record to the contrary. Additionally, Plaintiff, once again, has failed to establish any damages she sustained as a result of her ex-husband's signature not being required on the Junior Loan modification agreement or the converted loan and, therefore, Defendants' motion for summary judgment on this claim is **GRANTED.**

**5. *Plaintiff's Claim: Defendants breached the Charity I Settlement Agreement by failing to remove Plaintiff's ex-husband from the Junior and Senior Loans.***

Plaintiff's second allegation arising out of her ex-husband's status as a borrower to the loans is her allegation that Defendants breached the *Charity I* Settlement Agreement when they failed to release Plaintiff's ex-husband from the Junior and Senior Loans. (Complaint at ¶ 4.) Plaintiff alleges that prior to settlement, Defendants' attorney made specific representations to Plaintiff regarding Plaintiff's post-settlement ability to have her ex-husband released from the Junior and Senior Loans. (*Id.*) Plaintiff alleges that Defendants' failure to release her ex-husband from the Junior and Senior Loans constitutes Defendants' breach of the Settlement Agreement. (*Id.*) Defendants maintain that the release of Plaintiff's ex-husband was never a term of the *Charity I* Settlement, and that, even if the issue had been discussed during the *Charity I* negotiations, such extrinsic evidence is barred by the parole evidence rule. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 16-17.)

The parol evidence rule, as adopted by Ohio, "states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 27 (2000) (quoting 11 Williston on Contracts 569-70, § 33.4 (4 Ed. 1999)). The parol evidence rule is recognized not as a rule of evidence, but a rule of substantive contract law. *Id.* Thus, extrinsic evidence is excluded not for "the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission" but because the evidence "cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." *Id.* The principal purpose of the parol evidence rule is to protect the integrity of written contracts and to ensure their "stability, predictability, and enforceability[.]" *Id.* Therefore, the rule "effectuates a

presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document." *Id.* at 28 (internal citation omitted).

Despite the rule's presumption against the introduction of extrinsic evidence, the parol evidence rule does not prohibit extrinsic evidence under all circumstances. Thus, "a party [is not prohibited] from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Id.* Were the contrary true, the rule would "in effect hold that the maxim that fraud vitiates every transaction is no longer the rule; and such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing." *Id.*

When a party seeks to introduce parol or extrinsic evidence of fraud, "the proffered evidence of fraud must show more than a mere variation between the terms of the written and parol agreement[.]" *Id.* at 28. In cases where promissory fraud is alleged, as in the instant case, "'the rule excluding parol evidence of collateral promises to vary a written contract does not apply where such contract is induced by promises fraudulently made, with no intention of keeping them.'" *Id.* at 29 (quoting 37 Am. Jur. 2d *Fraud and Deceit* § 452). Nevertheless, "the parol evidence rule does apply 'to such promissory fraud if the evidence in question is offered to show a promise which contradicts an integrated written agreement. Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible.'" *Id.* at 30 (internal citation omitted).

An examination of the *Charity I* Settlement Agreement reveals the following consideration:

2. <u>Settlement Consideration</u>:

        a. GMACM shall:

    i.      Modify the Loans pursuant to the Loan Modification Agreements, attached as Exhibits A and B; and

    ii.     Amend credit going back to April 2008

       b. Claimant shall:

    i.      Pay $1,881.64 to GMACM by August 20, 2008;

    ii.     Dismiss the Action with prejudice within ten days of the Date of Agreement; and

    iii.    Release GMACM, ditech, and ResCap as provided for in Paragraph 3

(*Charity I* Settlement Agreement at ¶ 2.) As evidenced, the formal recitation of consideration between the parties does not contain any reference to Plaintiff's ex-husband. A further examination of the Loan Modification Agreements reveals the same. (Defs.' Mem. in Supp. of Mot. for Summ. J. Ex. A10-11.) Therefore, the *Charity I* Settlement Agreement lacks any term or textual reference consistent with Plaintiff's allegation that her ex-husband's removal from the junior and Senior Loans was a part of the settlement. Consequently, the only manner in which Defendants could be found to have breached the *Charity I* Settlement Agreement with respect to Plaintiff's allegation regarding her ex-husband is if there is other extrinsic, *admissible* evidence that demonstrates the ex-husband's removal became a part of the agreement through some other method.

      The *Charity I* Settlement Agreement contains an integration clause, which states:

13. <u>Complete Agreement.</u> The Parties further agree, declare and represent that no promise, inducement, representation, or agreement not herein expressed has been made to any Party or caused them to enter this Agreement. The Agreement contains the entire agreement between the Parties and the terms of the Agreement are contractual and not a mere recital. This is a fully integrated agreement. It may not be altered or modified by oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all parties in interest at the time of the alteration or modification.

(*Charity I* Settlement Agreement at ¶ 13.) The integration clause makes clear that the *Charity I* Settlement Agreement was intended by both parties to be a fully integrated agreement. Thus,

extrinsic evidence of a collateral promise inconsistent with the written embodiment of the *Charity I* settlement will be barred by the parol evidence rule absent a showing of fraud.

Plaintiff alleges that she was informed in writing prior to entering into the *Charity I* Settlement that—after settlement—her ex-husband could be removed from the Junior and Senior Loans. (Complaint at ¶ 4.) Plaintiff alleges that the terms were not included in the settlement and that this constitutes fraud. Plaintiff offers no proof of these allegations.

In contrast (and in direct contravention) to Plaintiff's bald assertion, however, Defendants present evidence of an email exchange between Defendant's attorney and Plaintiff. In relevant part, an email dated July 22, 2008, approximately one month before the *Charity I* settlement, states:

> As for removal of your ex-husband, this is not something that will be part of the settlement agreement or the terms of same, nor is this something my clients can do just based on your statements in the e-mail correspondence.

(Correspondence.) Thus, contrary to Plaintiff's allegation of fraud, the email indicates that Plaintiff was fully aware that removal of her ex-husband's name from the loans would not be part of the *Charity I* Settlement Agreement. The correspondence contains no other collateral guarantees or promises as to the contents of the formal *Charity I* Settlement Agreement. Consequently, a review of the *evidence properly before the Court* reveals no evidence of any agreement or conduct between Plaintiff and Defendants that would have the effect of making Plaintiff's ex-husband's removal from the loans a term of the *Charity I* Settlement Agreement. Accordingly, Defendants' motion for summary judgment on the issue is **GRANTED.**

**6. *Plaintiff's Claim: Defendants caused Plaintiff duress and violated Ohio Unconscionable Consumer Sales Acts or Practices by initiating foreclosure proceedings against Plaintiff during settlement negotiations.***

Plaintiff's final allegation arising out of the *Charity I* Settlement Agreement is that Defendants violated Ohio Rev. Code §§ 1345.03-31, 1345.04-05 by initiating foreclosure proceedings against her during settlement negotiations preceding the settlement in *Charity I*. (Complaint at ¶ 4.) Plaintiff also contends that the initiation of the foreclosure proceeding placed her under duress, and "caused her to "[agree] to several terms that [she] had objected to in writing." (*Id.*) Defendants do not deny that foreclosure proceedings were commenced during settlement negotiations, but insist that they had a legal right to do so and because of this legal right, Plaintiff's duress allegation fails as a matter of law. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 17-19.)

An examination of the statutes Defendants are alleged to have violated reveals no applicable statutory provision that, from the record, Defendants could possibly be construed to have violated. Neither Ohio Rev. Code § 1345.03 (Unconscionable Acts or Practices Generally) nor § 1345.031 (Unconscionable Acts of Practices Concerning Residential Mortgages) contain any provision relating to the initiation of foreclosure proceedings during settlement negotiations relating to a residential mortgage, nor any provision that could be construed as generally relating to economic duress or undue influence. Ohio Rev. Code § 1345.04 (Jurisdiction) and § 1345.05 (Consumer Protection Powers and Duties of the Attorney General) are also inapplicable. Thus, unless Defendants' conduct surrounding the settlement in *Charity I* constitutes duress, this component of Plaintiff's allegation fails.

As for Plaintiff's allegation of duress, Ohio has held that a person who alleges to have been subjected to economic duress must demonstrate "that he or she was subjected to 'a

wrongful or unlawful act or threat'" and that it "'deprive[d] the victim of his unfettered will.'" *Blodgett v. Blodgett*, 49 Ohio St. 3d 243, 246 (1990) (quoting 13 Williston on Contracts (3 Ed.1970) 704, Section 1617); *see also Local 17 Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Pension Fund v. Mooney Welding*, 993 F. Supp. 615, 619 (N.D. Ohio 1997). "'Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.'" *Blodgett,* 49 Ohio St. 3d at 246 (quoting 13 Williston on Contracts 708, § 1617 (3d ed. 1970)). Furthermore, Ohio has held that "[i]t is never duress to threaten to do that which a party has a legal right to do" and that "the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement." *Gallagher v. Lederer*, 86 Ohio App. 181, 183 (Ohio Ct. App. 1st Dist. 1949) (quoting 25 Am. Jur. 2d *Duress and Undue Influence* § 21).

        In the instant case, Plaintiff's allegation fails in light of Defendants' legal right to initiate foreclosure proceedings. It is undisputed that shortly after Plaintiff filed *Charity I*, she ceased making payments on the mortgage loan and home equity line of credit she had received from Defendants. After Plaintiff failed to make payments on either loan for four months, Plaintiff was in default, and Defendants initiated a foreclosure proceeding pursuant to their rights under the Junior Loan, Senior Loan, and LOC Agreement. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 5.) Thus, while Plaintiff may be correct in her assessment that the foreclosure action placed her at a "disadvantage in negotiations," because she had defaulted on her loans, Defendants had a legal right to initiate foreclosure proceedings, and this component of Plaintiff's claim fails as a

matter of law. Consequently, Defendants' motion for summary judgment on this component of

Plaintiff's claim is **GRANTED.**

**B. Allegations Arising Out of Defendants' Conduct with Respect to Plaintiff's Applications in 2008 and 2009 to Refinance Loans Owned and/or Serviced by Defendants.**

Plaintiff's remaining allegations all arise out of Defendants' alleged conduct

surrounding Plaintiff's applications for homeowner assistance programs and/or refinancing made

in January, March, and July of 2009. Plaintiff sets forth a myriad of allegations, however, all of

her allegations may be distilled into two general categories: (1) allegations arising out of

Defendants' alleged failure to provide accurate notice to Plaintiff pursuant to various federal

statutes, and (2) allegations arising out of Defendants' alleged discrimination towards Plaintiff.

Plaintiff's allegations will be addressed in turn below.[5]

> ### 1. Plaintiff's Claim: Defendants violated the reporting requirements of the Fair Housing Act, Equal Credit Opportunity Act, Federal Trade Commission Act, and the Fair Credit Reporting Act.

In her Complaint, Plaintiff alleges that defendants' violated the reporting and

notification requirements contained in numerous federal statutes, including the Fair Housing Act

(FHA), 42 U.S.C. §§ 3601-3631 (2006), Equal Credit Opportunity Act (ECOA), 15 U.S.C. §

1691 (2006), Federal Trade Commission Act (FTCA), 15 U.S.C §§ 41-58 (2006), and Fair Credit

Reporting Act (FCRA), 15 U.S.C. § 1681 (2006). (Complaint at ¶¶ 1, 3.) Plaintiff also insists that

Defendants violated the Truth in Lending Act (TILA), 15 U.S.C §§ 1601-1667 (2006),

Consumer Credit Protection Act (CCPA), 15 U.S.C §§ 1601-1613 (2006), and the Real Estate

---

[5] At the outset, the Court notes that the remaining allegations arise out Plaintiff's alleged attempts to take advantage of various governmental stimulus programs. Participation in these programs, however, does not give rise to causes of action. The Emergency Economic Stabilization Act of 2008 ("EESA") was signed into law on October 3, 2008. Section 110 of the EESA authorizes the Treasury Department to enact homeowner assistance programs. 12 U.S.C. § 5220. The EESA does not give rise to private causes of action. *See Mangosing v. Wells Fargo Bank, N.A.*, Case No. CV-09-0602-PHX-FJM, 2009 WL 1456783, at *1 (D. Ariz. May 22, 2009).

Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2613 (2006).[6] (Pl.'s Response Brief at 5-7). Defendants maintain that Plaintiff's Complaint contains only conclusory allegations and consequently, that it violates general rules of pleading and should fail as a matter of law. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 20-23). Notwithstanding this deficiency, Defendants also attempt to substantively respond to each "claim" alleged by Plaintiff. (*Id.*)

As a threshold matter, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level […]." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

While pro se litigants are generally afforded a more lenient pleading standard, this standard is not without its limits. *See Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989); *Sutphin v. McFaul*, No. 1:07 CV 933, 2007 U.S. Dist. LEXIS 51195, at *8 (N.D. Ohio July 16, 2007). Accordingly, "[d]istrict courts are not required to conjure up questions never squarely presented to them or to construct full blown allegations from sentence fragments" because "[t]o do so would 'require …[the courts] to explore exhaustively all potential allegations of a pro se

---

[6] Plaintiff's "allegations" with respect to the Defendant's purported violations of the Truth in Lending Act, Consumer Credit Protection Act, and the Real Estate Settlement Procedures Act do not appear in the Complaint, but, instead, appear for the first time in Plaintiff's Response Brief. Plaintiff never sought leave to add these allegations. Despite the fact that these allegations have not been properly plead, and in an abundance of caution, the Court will address the arguments relating to these particular statutes.

plaintiff, … [and] would…transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Sutphin*, No. 1:07 CV 933, 2007 U.S. Dist. LEXIS 51195, at *8-9 (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985)). In *Levine v. Citibank*, plaintiff alleged multiple violations of the FCRA, however, *inter alia,* failed to "cite any specific provision of the FCRA which [the d]efendant allegedly violated." *Levine v. Citibank*, No. 07CV2032(CAB), 2008 U.S. Dist. LEXIS 5702 at *6 (S.D. Cal. Jan. 24, 2008). The court held that the allegation failed to meet the requirements of Fed. R. Civ. P 8 because "under Fed. R. Civ. P. 8, [the d]efendant need not guess which provision of law [the p]laintiff is suing under, but instead must be put on fair notice of such allegation(s)." *Id.* (citing *Twombly*, 127 S. Ct. at 1964).

In the instant case, Plaintiff alleges in her Complaint that Defendants violated the notification requirements of the FHA, ECOA, FTCA, and FCRA. With respect to three of these statutes—the FHA, ECOA, and FCRA—Plaintiff does not provide any guidance as to the specific provision of the statute under which she is seeking relief, but instead couches her allegations in conclusory terms.[7] The result is that Defendants (and the Court) are left to guess which portions of the statutes they are accused of violating. This does not satisfy even the liberal pleading standard afforded to pro se litigants.

Despite these failures, Plaintiff does levy one allegation against Defendants that "contains the specific provision of law [P]laintiff is suing under." *Levine*, 2008 U.S. Dist. LEXIS 5702, at *6. Specifically, Plaintiff alleges that Defendants violated sections 45(a)(1),

---

[7] *See, e.g.,* Complaint at ¶ 4 ("DEFENDANT is in default under all required rules of the Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988), 42 U.S.C. §§ 3601-3619; the Equal Credit Opportunity Act, 15 U.S.C. § 1691-691f; and the Federal Trade Commission Act, 15 U.S.C. §§ 45(A) (1), 45(m) (1) (A), 49, 53(b), 56(a), and 57(b). [sic] Fair Credit Reporting Act. DEFENDANT failed to give any explanation as refusal to follow through with contract, refusal to issue notice of eligibility/ineligibility, with total disregard to PLAINTIFF, and therefore, a Civil Rights violation is constituted to have taken place.")

45(m)(1)(A), 49, 53(b), 56(a), and 57(b) of the FTCA, however, this allegation is also insufficient to survive summary judgment. Though the allegation does state the specific provision of law under which [P]laintiff is suing, the allegation merely concludes that Defendants are guilty of violating the provisions—without articulating any identifiable reason to support Plaintiff's allegation.

Generally this Court would grant leave to amend when a request for relief is struck pursuant to Fed. R. Civ. P. 8. However, with respect to Plaintiff's allegations under the FHA, ECOA, FCRA, FTCA and—despite not appearing in the Complaint—Plaintiff's attempt to seek relief under TILA, CCPA, and RESPA, granting leave to amend would ultimately be futile. "Futility, alone, can constitute a satisfactory ground for denying a motion for leave to amend." *See generally, Wiedbrauk v. Lavigne*, 174 Fed. Appx. 993 (6th Cir. 2006) (affirming denial of motion to amend when amendment would have been futile). As correctly asserted by Defendants, the FHA and FCRA do not require a response to an applicant after submitting an application for refinance. Additionally, "no private cause of action exists under the FTCA." *Sharwell v. Selva*, 4 Fed. App'x 226, 227 (6th Cir. 2001) (citing *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988 (D.C. Cir. 1973)). Thus, Plaintiff's "claim" that Defendants violated the FTCA fails as a matter of law. Furthermore, though the ECOA requires creditors to notify applicants of adverse action in certain circumstances, 15 U.S.C. § 1691(d) (2006), Defendants complied with this requirement when applicable to Plaintiff's applications.[8] (Defs.' Mem. in Supp. of Mot. for Summ. J. Ex. D-1, "Credit Denial.")

---

[8] Plaintiff's attempts to seek relief under TILA, CCPA, and RESA are also futile. Even if Plaintiff's potential allegations under TILA, CCPA, and RESPA were properly pled in accordance with Fed. R. Civ. P. 8, Plaintiff has failed to articulate any harm that would amount to damages caused by Defendants' alleged failure to comply with each statute.

For these reasons, Defendants' motion for summary judgment with respect to all of Plaintiff's allegations arising out of Defendants' alleged violation of the reporting and notification requirements of the FHA, ECOA, FTCA, and FCRA is **GRANTED.**

### 2. Plaintiff's Claim: Defendants unlawfully discriminated against Plaintiff in violation of the Fair Housing Act and Equal Credit Opportunity Act.

Plaintiff alleges that that Defendants unlawfully discriminated against her in violation of the FHA and ECOA when Defendants "aware that Plaintiff was African American […] cancelled Plaintiff's loan applications without just cause, failed to respond to requests by Plaintiff, and failed to issue notification as to why they would not afford Plaintiff equal treatment as any other race and class of individuals would reasonably receive." (Pl.'s Response Brief at 7). Defendants maintain in their Reply that the loan representatives who interacted with Plaintiff had no way of knowing Plaintiff's race because Plaintiff failed to disclose her race on each loan application, and even if the representatives did have knowledge of her race it would be insufficient to create a genuine issue of material fact as to Defendants' knowledge of her race. (Defs.' Reply at 7-10; Defs.' Mot. for Summ. J. Ex. D, Affidavit of Ardeshir Khoei at ¶ 8.)

The ECOA was created with the purpose to "'eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit.'" *Midkiff v. Adams County Reg'l Water Dist.,* 409 F.3d 758, 771 (6th Cir. 2005) (quoting *Mays v. Buckeye Rural Elec. Coop., Inc*., 277 F.3d 873, 876 (6th Cir. 2002)). In accordance with this purpose, the ECOA provides that it shall be unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction-- (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)[.]" 15 U.S.C. § 1691 (a)(1) (2006). Thus, in order for Plaintiff's allegation to withstand summary judgment, Plaintiff must present "significant

probative evidence in support of [her] complaint to defeat the motion for summary judgment."
*Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

In the instant case, Plaintiff has failed to present "significant probative evidence" that Defendants used her race as a basis for rejecting the applications she made under various homeowner assistance plans. Defendants argue, and Plaintiff admits, that Plaintiff did not specify her race on any loan applications submitted to Defendants. Plaintiff nevertheless asserts that because she submitted a driver's license photo and her race was disclosed in loan paperwork in 2004 and 2005, Defendants knew this information and used it to unlawfully discriminate against her because of her race during the pendency of her applications years later. Nothwithstanding Plaintiff's unsupported speculation to the contrary, Defendants have supported their motion with unrefuted evidence that race played no role in the decision.[9] (*See* Khoei Aff. at ¶ 8.)

As for Plaintiff's allegation that Defendants unlawfully discriminated against her in violation of the Fair Housing Act, Plaintiff has failed to satisfy even the liberal pleading standard afforded to pro se litigants. *See Wells,* 891 F.2d at 594; *Sutphin*, 2007 U.S. Dist. LEXIS 51195, at *8 (holding that pro se plaintiffs are generally afforded a liberal pleading standard, though not a standard without limits). Plaintiff's allegation is conclusory and falls short of providing Defendants with adequate notice as to which provision of the FHA Plaintiff seeks relief under. Furthermore, even if Plaintiff's allegation were properly pled, it would ultimately be futile for the same reasons previously advanced.

Thus, because there exists no genuine issue of material fact as to Plaintiff's allegations under the FHA or ECOA, Defendants' motion for summary judgment on the issue is **GRANTED.**

---

[9] Even accepting plaintiff's unsupported theory as true—that Defendants sifted through old applications and loan documents in search of evidence of Plaintiff's race—plaintiff has failed to offer any evidence that Defendants used this knowledge as a basis for rejecting her loan applications.

### III. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is

**GRANTED as to all of Plaintiff's claims and allegations.** This case is closed.

**IT IS SO ORDERED**.


Dated: September 14, 2010                    _____
                                             **HONORABLE SARA LIOI**
                                             **UNITED STATES DISTRICT JUDGE**